|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF TEXAS<br>BROWNSVILLE DIVISION | United States District Court<br>Southern District of Texas<br>FILED<br>JUN 1 5 2004<br>Michael N. Milby<br>Clerk of Court |

DINO X. CHAVEZ, §
§
Plaintiff, §
§
vs. § CIVIL ACTION NO. B-04-042
§
AMERICAN FAMILY LIFE §
ASSURANCE COMPANY OF COLUMBUS, §
§
Defendant.

## DEFENDANT AFLAC'S REPLY TO CHAVEZ'S RESPONSE TO AFLAC'S MOTION TO STAY PROCEEDING AND COMPEL ARBITRATION

American Family Life Assurance Company of Columbus ("AFLAC") respectfully submits this Reply to plaintiff Dino Chavez's Response to AFLAC's Motion to Stay Proceeding and Compel Arbitration.

### I. Summary of Chavez's Response and AFLAC's Reply

In response to AFLAC's Motion, plaintiff Chavez posits three reasons not to compel arbitration. First, according to Chavez, the arbitration clause he signed is narrow, such that his Section 1981 claim does not "arise under" his Regional Sales Coordinator Agreement ("RSC Agreement"). Hence, according to Chavez, that claim is not arbitrable. Second, professing not to have found any cases addressing the arbitrability of Section 1981 claims, he argues that Section 1981 claims are like Section 1983 claims, and, because a court in a Section 1983 action did not afford *res judicata* effect to an arbitration award in a proceeding brought under a collective bargaining agreement, then it somehow follows that neither Section 1983 nor Section 1981 claims are arbitrable. Third and finally, Chavez argues that the arbitration clause is

unconscionable because a Georgia court appoints the neutral arbitrator; and, therefore, it is unenforceable.

All three reasons are without merit. First, the arbitration provision here is broad. It requires the arbitration of "all controversies." As such, all of plaintiff's causes of action, including his Section 1981 claim, must be arbitrated. Next, as to the arbitrability of Section 1981 claims, AFLAC found several cases in which federal courts sent Section 1981 claims to arbitration. Further, many federal courts, including the Fifth Circuit, hold that Title VII claims, which are very similar to Section 1981 claims, are also arbitrable. Finally, the appointment of a neutral arbitrator by a court in Georgia is not unconscionable. Both the Federal Arbitration Act and the Texas Arbitration Act contemplate that local courts may appoint arbitrators. An arbitration provision that simply follows the statutes cannot be unconscionable.

## II. Chavez's Claims Must Be Arbitrated, Not Litigated

A. <u>Chavez Agreed to Arbitrate "All Controversies," Not Only Those "Arising Under" the Agreement</u>.

Chavez would wrongly lead this Court to believe that the arbitration provision that Chavez signed is narrow in scope. It is nothing of the sort. Chavez quotes only a portion of the operative language—purposefully excluding the most expansive part. The operative arbitration provision appears in subparagraph 15(a) of Chavez's Associate's Agreement.[1] It provides *in toto*:

> "Any dispute arising under this agreement, to the maximum extent allowed by applicable law, shall be subject to arbitration, *and prior to commencing any court action the parties agree that they shall arbitrate all controversies.* (emphasis added)

---

[1] The Associate's Agreement is attached as Exhibit 1 to AFLAC's Motion and Brief to Stay Proceeding and Compel Arbitration, filed April 29, 2004. When Chavez entered into his RSC Agreement, he reincorporated and adopted the same arbitration provision into his RSC Agreement. See paragraph 7 of Chavez's RSC Agreement, attached as Exhibit 2 to AFLAC's Motion to Compel.

Chavez deliberately omits the last half of the operative provision, the most expansive half: "prior to commencing any court action *the parties agree that they shall arbitrate all controversies.*" There are no modifiers to "all controversies." There are no limiting conditions. One would be hard-pressed to draft an arbitration provision with a more expansive scope.

An expansive arbitration clause like this one is intended to reach all aspects of the parties' relationship. *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.2d 160, 165 (5th Cir. 1998), *cert. denied* 119 S. Ct. 179 (1998). Arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Neal v. Hardee's Food*, 918 F.2d 34, 37 (5th Cir. 1990) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 80 S.Ct. 1347, 1353, 363 U.S. 574, 582-83 4 L. Ed. 2d 1409 (1960)). The subject arbitration agreement is susceptible of but one interpretation: the parties agree to arbitrate all controversies. There is no doubt that it includes all of Chavez's claims against AFLAC, including his Section 1981 claim.[2]

B.   A Section 1981 Claim May Be Arbitrated.

Contrary to Plaintiff's assertions, claims brought under 42 U.S.C. § 1981 are arbitrable. Although plaintiff purports not to have been able to find any cases discussing the arbitrability of Section 1981 claims, a glimpse at the annotations under 42 U.S.C.A. § 1981 turns up note 1062,

---

[2] Even if the "arising under" portion of the arbitration provision were the *only* part of the arbitration provision, which it is not, Chavez's Section 1981 claim *still* falls within its scope. For, Section 1981 prohibits discrimination in the "making and enforcing of contracts." Thus, one cannot prove a Section 1981 claim without first proving the existence of a contract. Evidently aware of this fundamental truism, Chavez in his Response completely shifts directions and says for the first time that the contract at issue is not his RSC Agreement terminated by AFLAC, but the "contracts" he was prevented from making with BISD and other AFLAC agents. Aside from the fact that this new-found theory contradicts his pleadings, that theory fails to state a claim under 42 U.S.C. § 1981. That new-found theory is simply a claim for interfering with business relations. Allegations of interference with business relation do not state a claim under Section 1981. *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (lawyer's allegations that newspaper's libelous statements interfered with his business relations failed to state a claim under 42 U.S.C. § 1981). Therefore, if Chavez intends to assert a claim for interference with his business relations with BISD and other AFLAC agents, then his Section 1981 cause must be dismissed for failure to state a claim upon which relief may be granted.

"Arbitration, remedies and relief generally." Under that annotation is a citation to *Shaw v. DLJ Pershing*, 78 F. Supp. 2d 781 (N.D. Ill. 1999), appeal dism'd 234 F.3d 1274. In *Shaw*, the court held that claims brought pursuant to 42 U.S.C. § 1981 are subject to compulsory arbitration. 78 F. Supp. at 782. The court rejected the plaintiff's argument that compelled arbitration is fundamentally inconsistent with Section 1981. It noted that when Section 1981 was amended in 1991, Congress stated, "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." *Id.* (citing to Pub. L. No. 102-1166 Section 118, 105 Stat. 1071, 1081 (1991)). The *Shaw* court also focused on the similarity of Section 1981 claims to Title VII claims, which are also arbitrable. *Shaw*, 78 F. Supp. at 782 (citing *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 364 (7th Cir. 1999)).

*Shaw* is not the only decision to find that Section 1981 claims are arbitrable, simply the easiest one to find within cursory research. Other courts in this circuit (including one in the Southern District) have referred Section 1981 claims to arbitration. *See, e.g., Quinn v. EMC Corp.*, 109 F. Supp. 2d 681 (S.D. Tex. 2000); *Cooper v. Citigroup, Inc.*, No. Civ. A. 3:99-CV-1471-G, 1999 WL 1007664 (N.D. Tex. 1999). Indeed, recent case law addressing the arbitrability of Section 1981 claims is virtually unanimous in deciding that such claims are arbitrable. *See Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61 (D.D.C. 2003); *Gooden v. Village Green Mgmt. Co.*, No. Civ. 02-835 (JRT/SRN), 2002 WL 31557689 (D. Minn. 2002); *Emeronye v. CACI Int'l, Inc.*, 41 F. Supp. 2d 82 (D.D.C. 2001); *Almonte v. Coca-Cola Bottling Co. of New York, Inc.*, 959 F. Supp. 569 (D. Conn. 1997).

A broad presumption exists in favor of the arbitration of statutory claims arising out of employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123-24, 121 S. Ct. 1302, 1313, 149 L. Ed. 2d 234 (2001) (finding that statutory claims arising out of employment contracts, particularly discrimination claims arising under state law, are subject to arbitration); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 1652 114 L. Ed. 2d 26 (1991) (finding that ADEA claims are arbitrable); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 747-48 (5th Cir. 1996) (finding that Title VII claims are arbitrable). The Fifth Circuit first recognized the arbitrability of Title VII claims in *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991). The Fifth Circuit originally held that the Title VII claims at issue in *Alford* were not arbitrable. *Id.* After a grant of certiorari by the Supreme Court, the Fifth Circuit decided on remand that, in light of *Gilmer* and the fact that both the ADEA and Title VII are similar civil rights statutes, Title VII claims can be subjected to mandatory arbitration. *Id.* at 230. Although research has disclosed no new cases from the Fifth Circuit on this point,, recent precedent would indicate that claims arising under 42 U.S.C.A. § 1983 are also subject to arbitration in the Fifth Circuit. *McGill v. Rural/Metro Corp.*, No. 2:00 CV 192-B, 2001 WL 484796 (N.D. Miss. 2001).[3] In light of the broad presumption favoring the arbitration of employment disputes, particularly those arising under civil rights statutes similar to Section 1981, this Court should compel plaintiff's Section 1981 claim to arbitration, just as numerous other district courts have done under similar circumstances.

---

[3] Although the case of *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 104 S.Ct. 1799, 80 L. Ed. 2d 302 (1984) cited by Chavez has not been directly overruled, in light of the Supreme Court's ruling in *Gilmer*, its precedential value is questionable. This is particularly true in cases where, as here, the case involves an arbitration provision in a contract of employment, rather than in a collective-bargaining agreement.

C. <u>The Arbitration Provision Is Not Unconscionable</u>.

First, as a general rule, courts have rejected arguments that arbitration clauses in the context of employment agreements are unconscionable.[4] *See, e.g. Quinn*, 107 F.Supp at 685-87; *EZ Pawn v. Gonzales*, 934 S.W.2d 87 (Tex. 1996). Secondly, and more importantly, Chavez has provided no proof whatsoever that the arbitration provision is unconscionable. Instead, he employs conjecture and surmise to arrive at his unsupported conclusion that a state court judge in Georgia is *per se* incapable of appointing a neutral arbitrator.

Chavez's argument must be rejected for several reasons. First, Chavez's argument has no factual basis. Absent facts to support it, Chavez cannot carry his burden of proving unconscionability. *See Quinn*, 109 F.Supp. 2d at 687.

Second, the very statutory scheme invoked to compel arbitration—the Federal Arbitration Act—contemplates that a court may be asked to appoint an arbitrator. 9 U.S.C.A. § 5 (if there is a lapse in naming an arbitrator, either party may ask a court to appoint an arbitrator). Similarly, the Texas Arbitration Act provides that a Texas state court judge may select an arbitrator for the parties. TEX. CIV. PRAC. & REM. CODE ANN. § 171.041 (Vernon Supp. 2004). Neither Congress nor the Texas Legislature would have codified unconscionable procedures. Accordingly, they must believe that local judges are capable of and will carry out the appointment of arbitrators with impartiality. The provision for a Georgia court to appoint the neutral arbitrator does not give an unfair advantage any more than a forum selection clause would impede a just result in a court of law. *See, Marsh v. First USA Bank, N.A.*, 103 F.Supp 2d 909, 920 (N.D. Tex. 2000).

Finally, if Chavez believes the neutral arbitrator failed to act impartially, he has a remedy: he can seek to vacate the award under Section 10 of the Federal Arbitration Act. It

---

[4] Chavez concedes he was an independent agent. Nonetheless employment cases are analogous and persuasive on the point that requiring arbitration of employee-employer disputes is not unconscionable.

**Reply to Chavez's Response – Page 6**

provides that a federal court may vacate an arbitration award "[w]here there was evident partiality or corruption in the arbitrators or either of them." 9.U.S.C. § 10(a)(2). The same relief is available under the analogous Texas provision. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(2)(A) (Vernon Supp. 2004) Chavez's allegation of unconscionability must be rejected.

### III. Conclusion

As AFLAC has demonstrated in its Motion to Compel Arbitration, the claims asserted by Chavez are subject to the parties' arbitration agreement. He agreed to arbitrate "all controversies", without limitation. His Section 1981 claim is arbitrable, and compelling arbitration is not unconscionable. Accordingly, this cause must be stayed and Chavez compelled to proceed to arbitration.

Respectfully submitted,

By: _____
William B. Steele III
State Bar No. 19107400
Southern Dist. No. 8019
LOCKE LIDDELL & SAPP LLP
100 Congress, Suite 300
Austin, Texas 78701
512-305-4700
512-305-4800 (fax)

**ATTORNEYS FOR AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was served on this 14th day of June, 2004, via facsimile and first class U.S. mail upon counsel of record as follows:

J. Arnold Aguilar
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520
Fax: (956) 504-1408

_____
William B. Steele III

**Reply to Chavez's Response – Page 8**
AUSTIN:04055/00005:297686v1