14

United States District Court
Southern District of Texas
FILED

JUL 0 2 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DINO X. CHAVEZ,                          §
                                         §
        Plaintiff,                       §
                                         §
vs.                                      §        CIVIL ACTION NO. B-04-042
                                         §
AMERICAN FAMILY LIFE                     §
ASSURANCE COMPANY OF COLUMBUS,           §
                                         §
        Defendant.                       §

### DEFENDANT AFLAC'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS AND TO COMPEL ARBITRATION

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendant American Family Life Assurance Company of Columbus ("AFLAC") submits

this Supplemental Brief in Support of Its Motion to Stay Proceedings and to Compel Arbitration,

as requested by the Court at the hearing on June 18, 2004, and respectfully states as follows:

### I. Employment Agreements Involving Interstate Commerce Are Subject to the Requirements of the Federal Arbitration Act

At the hearing on June 18, 2004, on AFLAC's Motion to Stay Proceedings and to Compel

Arbitration, plaintiff's counsel raised the following issue: Whether the last clause of 9 U.S.C. § 1

of the Federal Arbitration Act ("FAA"), which provides that the FAA shall not apply to

"contracts of employment of seamen, railroad employees, or any other class of workers engaged

in foreign or interstate commerce," serves to exempt all employment contracts involving

interstate commerce from the FAA.  This issue was put to rest by the Supreme Court in *Circuit

City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302 (2001).  Prior to *Circuit City*, all of the

circuit courts that had addressed this issue, with the exception of the Ninth Circuit, construed the

exemption narrowly, applying the exemption only to workers actually engaged in moving goods

in interstate commerce. *See, e.g., Rojas v. TK Communications, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996). The Ninth Circuit, as the loan dissenter, had determined that all contracts of employment were exempt from the scope of the FAA. *See, e.g., Craft v. Campbell Soup Co.*, 177 F.3d 1083 (9th Cir. 1999). The Supreme Court resolved this split in *Circuit City*. In reversing the Ninth Circuit, the Supreme Court held, "We now decide that the better interpretation is to construe the statute [9 U.S.C. § 1], as most of the Courts of Appeals have done, to confine the exemption to transportation workers." *Circuit City, supra*, 532 U.S. at 109, 121 S.Ct. at 1306.

In the instant case, there is no suggestion that plaintiff Chavez is a transportation worker engaged in shipping goods through interstate commerce. Further, there is no dispute that the Associate's Agreement and the Regional Sales Coordinator's Agreement signed by Chavez involve interstate commerce. The facts establishing interstate commerce are set forth in pages 7 and 8 of AFLAC's Motion to Stay Proceedings and Compel Arbitration, which facts are verified. In fact, plaintiff's counsel conceded at oral argument on June 18 that Chavez's agreement involves interstate commerce. Therefore, the FAA applies to Chavez's contract, per 9 U.S.C. § 2. And, because the exemption from coverage under Section 1 of the FAA is narrowly construed to apply only to transportation workers, the exemption would not apply to Chavez. Therefore, Chavez's agreement to arbitrate is governed by the FAA.

## II. Chavez's Section 1981 Claim Is Arbitrable

At the hearing on June 18, plaintiff's counsel argued that Chavez's Section 1981 claim was outside the scope of his arbitration provision because Chavez was complaining about AFLAC's interference with his business relations, rather than the termination of his RSC Agreement with AFLAC. He argued that, as a result of the alleged discrimination by AFLAC, plaintiff was prevented from entering into "contracts" with either (1) BISD employees or (2) other AFLAC agents to split commissions on sales of AFLAC products to BISD employees.

These other "contracts", according to Chavez, constitute the contractual "hook" that gives rise to his claim under 42 U.S.C. § 1981, which prohibits racial discrimination in the making or enforcing of contracts.

A fair reading of plaintiff's Amended Petition, however, belies that notion. It shows that plaintiff is complaining about losing his position as a Regional Sales Coordinator with AFLAC, not about any interference with his business relations. In fact, plaintiff also sues AFLAC for breach of his RSC Agreement. His Section 1981 claim is simply an adjunct claim that the breach of his RSC Agreement occurred because he is Hispanic.

In deciding whether Chavez's Section 1981 claim is arbitrable, this Court is not bound by labels given by plaintiff to his claims, but should instead "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *Grigson v. Creative Argists Agency*, 210 F.3d 524, 526 (5th Cir. 2000). Clearly, plaintiff's Section 1981 claim is based upon the allegation that his RSC Agreement was terminated because Chavez is Hispanic. As such, his Section 1981 claim arises under his agreement and is arbitrable.

But, even if some credence were given to Chavez's interference-with-business-relations argument, a closer look reveals the fundamental flaw in that argument. His interference claim also arises under his contract because he must refer to his contract with AFLAC to establish his role as an AFLAC agent. These supposed "contracts" he was prevented from making, whether with BISD employees or other AFLAC agents, could only be entered into by Chavez as an agent of AFLAC. That is, plaintiff has no God-given right to represent AFLAC. Plaintiff has no inherent right to sell AFLAC policies to BISD employees or to anyone else. He has no inherent right to split commissions with other AFLAC agents for the sale of AFLAC policies. The sole authority for Chavez either to sell AFLAC policies or to split commissions with other AFLAC agents resides in his appointment as an AFLAC agent. Absent plaintiff's status as an agent of

AFLAC, he has absolutely no legal authority or right either to sell AFLAC policies or to split commissions with other AFLAC agents.

Therefore, even under plaintiff's brand-new theory of interference with business relations,[1] plaintiff cannot establish such interference without referring to his position as an AFLAC agent. His position as an AFLAC agent is established *only* through his agreement with AFLAC. He was not born an AFLAC agent; he contracted to become one. Thus, he *must* refer to his contract with AFLAC, for that is the *only* basis for his serving as an AFLAC agent.

In determining whether a claim "arises under" a contract, the test is whether that claim is so interwoven with the contract that it cannot stand alone or, on the other hand, is completely independent of a contract and could be maintained without any reference to the contract. *Valero Energy Corp. v. Wagner and Brown, II*, 777 S.W.2d 564, 566 (Tex. App.—El Paso 1989, writ denied). Here, Chavez cannot establish his role as an AFLAC agent—a role that is essential to his claim that he was prevented from selling AFLAC policies or splitting commissions—without reference to his contract appointing him an AFLAC agent. His contract is what makes him an AFLAC agent. Thus, his claim of interference with business relations must refer to his contract with AFLAC. Therefore, his interference claim "arises under" his contract.

Stated another way, the clause "arises out" of a contract in an arbitration provision encompasses matters "aris[ing] in the course of and during the on-going relationship . . . created and governed . . ." by the contract containing the arbitration provision. *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 46 (3d Cir. 1978). In this case, Chavez's

---

[1] AFLAC would also note, once again, that if plaintiff truly intends to assert that his Section 1981 claim is based on the alleged interference with his business relations with BISD employees or other AFLAC agents, then plaintiff has failed to state a cause of action for a Section 1981 violation. *See, Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (lawyer's allegations that newspaper's libelous statements interfered with his business relations failed to state a claim under 42 U.S.C. § 1981). So, his Section 1981 claim should be dismissed, and, once dismissed, it is gone and cannot be ordered to arbitration. In either event, his interference-with-business-relations Section 1981 claim cannot be litigated here.

dealings as an agent for AFLAC with BISD employees or other agents arose in the course of and during his on-going relationship with AFLAC, which relationship was created and governed by his agreement with AFLAC, which contains the arbitration provision. Therefore, his interference with business relations claim also arises under his contract, and, hence, is arbitrable.

### III. Statutory Claims, Such as Section 1981 Claims, Are Arbitrable

At the June 18 hearing, the Court asked whether statutory claims are arbitrable. The United States Supreme Court and the Fifth Circuit have both answered in the affirmative. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S. Ct. 1647 (1991), the Supreme Court held that a federal statutory claim of age discrimination under the Age Discrimination in Employment Act is arbitrable. In holding ADEA claims arbitrable, the *Gilmer* Court addressed the one case cited by Chavez in support of his proposition that Section 1981 claims are *not* arbitrable, the case of *McDonald v. City of West Branch, Michigan*, 466 U.S. 284 (1984). In *Gilmer*, the Supreme Court explained that *McDonald* and similar cases are distinguishable, primarily because they involve arbitration under collective bargaining agreements, and concluded that "those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate an ADEA claim." 500 U.S. at 35, 111 S.Ct. at 1657. Nor should *McDonald* provide a basis for refusing to enforce Chavez's agreement to arbitrate a Section 1981 claim.

In like fashion, the Supreme Court held that an employee's statutory claim for discrimination based upon California's anti-discrimination statute is also arbitrable. *Circuit City v. Adams, supra.* In *Circuit City*, the Supreme Court noted that it was simply building upon its decision in *Gilmer*: "The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by Federal law; as we noted in *Gilmer*," '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights

afforded by the statute; it only submits to their resolution in an arbitrable, rather than a judicial, forum.'" 532 U.S. at 123, 121 S.Ct. at 1313.

The Fifth Circuit has also determined that statutory claims are arbitrable. *See, e.g., Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir. 1991) (Title VII discrimination claims are arbitrable); *Rojas v. TK Communications, Inc.,* 87 F.3d 745, 747-48 (5th Cir. 1996) (same). A Section 1981 discrimination claim is very similar to an employment discrimination claim under Title VII. There are no policy reasons unique to Section 1981 that would exempt such claims from arbitration. In fact, when Section 1981 was amended in 1991, Congress stated, "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." Pub. L. No. 102-1166 Section 118, 105 Stat. 1071, 1081 (1991). Thus, Congress' policy is clearly stated: Section 1981 claims are encouraged to be resolved using arbitration.

As noted in AFLAC's Reply Brief filed on June 15, 2004, several district courts have determined that Section 1981 claims are arbitrable. *Shaw v. DLJ Pershing,* 78 F. Supp. 2d 781 (N.D. Ill. 1999), appeal dism'd 234 F.3d 1274; *Quinn v. EMC Corp.,* 109 F. Supp. 2d 681 (S.D. Tex. 2000); *Cooper v. Citigroup, Inc.,* No. Civ. A. 3:99-CV-1471-G, 1999 WL 1007664 (N.D. Tex. 1999); *Brown v. Dorsey & Whitney, LLP,* 267 F. Supp. 2d 61 (D.D.C. 2003); *Gooden v. Village Green Mgmt. Co.,* No. Civ. 02-835 (JRT/SRN), 2002 WL 31557689 (D. Minn. 2002); *Emeronye v. CACI Int'l, Inc.,* 41 F.Supp. 2d 82 (D.D.C. 2001); *Almonte v. Coca-Cola Bottling Co. of New York, Inc.,* 959 F.Supp. 569 (D. Conn. 1997). This dispute, too, should be sent to arbitration.

## IV. Conclusion

AFLAC respectfully urges this Court to stay these proceedings and compel arbitration for the reasons set forth above and in its prior briefs. In making this determination, this Court should be guided by the Supreme Court's admonition that "due regard must be given to federal policy favoring arbitration, and ambiguities in the scope of the arbitration clause must be resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62, 115 S.Ct. 1212, 1218 (1995). "The [FAA] establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941 (1983). Indeed, arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353 (1960). The overwhelming weight of authority compels but one conclusion: this dispute should be sent to arbitration.

Respectfully submitted,

By: _____

William B. Steele III
State Bar No. 19107400
Southern Dist. No. 8019
LOCKE LIDDELL & SAPP LLP
100 Congress, Suite 300
Austin, Texas 78701
512-305-4700
512-305-4800 (fax)

**ATTORNEYS FOR AMERICAN FAMILY LIFE
ASSURANCE COMPANY OF COLUMBUS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was served via first class U.S. mail, on this 1st day of July, 2004, upon counsel of record as follows:

J. Arnold Aguilar
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520

_____
William B. Steele III