United States District Court
Southern District of Texas
ENTERED
JUL 27 2004
Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| DINO X. CHAVEZ, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-04-042 |
| | § | |
| AM. FAMILY LIFE ASSURANCE CO., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This lawsuit was removed from the 138th Judicial District Court of Cameron County, Texas, to this Court on March 2, 2004. Docket No. 1. In the underlying state suit, the Plaintiff alleges that the Defendant's conduct infringed on "Plaintiff's rights as a hispanic citizen to make and enforce contracts" in violation of 42 U.S.C. § 1981. Id. at Exhibit C ("Plaintiff's Original Petition"). The Plaintiff also advances a state law cause of action for intentional infliction of emotional distress. Id.

Subsequent to removing this case, the parties have become embroiled in a dispute over whether this matter must be stayed and sent to arbitration pursuant to 9 U.S.C. §§ 3-4. Docket Nos. 6, 10, 11, 14, 16. For the reasons elaborated below, the Court hereby **ORDERS** "the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Furthermore, the Court **STAYS** this case "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

### I. BACKGROUND

The arbitration clause at issue, which references the Federal Arbitration Act ("FAA"), is located in the fifteenth paragraph of the Plaintiff's "Associate's Agreement" with the Defendant. See Docket No. 6 at Exhibit 1. The entire "Associate's Agreement" is reaffirmed in the seventh paragraph of "Regional Sale Coordinator's Agreement" between the Plaintiff and Defendant, which also states that "[a]ll of the provisions of the . . . Associate's Agreement . . . shall govern" the "Regional Sale Coordinator's Agreement" as well. See id. at Exhibit 2. The Plaintiff's § 1981 action is premised on the Defendant's termination of this latter agreement. See Docket No. 1 at Exhibit C ("Plaintiff would show that he was one of a few of Defendant's Regional Sales Coordinators in Texas,

who are hispanic, and Defendant AFLAC has never treated or terminated any white RSC in the same abrupt and immediate manner in which Plaintiff was treated and terminated."); see also Docket No. 6 (stating that Defendant exercised its right under the agreement to terminate Plaintiff as regional sales coordinator on January 27, 2002).

## II.   DISCUSSION

A court faced with a motion to compel arbitration must conduct a twofold inquiry. First, "the court must determine whether the parties agreed to arbitrate the dispute." Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004). If so, then the court "must consider whether any federal statute or policy renders the claims nonarbitrable." Id.

### A.   Did the Parties Agree to Arbitrate this Dispute?

Deciding "whether the parties agreed to arbitrate the dispute in question" likewise consists of a two-pronged inquiry. Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1065 (5th Cir. 1998). First, the court must ask "whether a valid agreement to arbitrate between the parties exists." Id. Second, the court must examine "whether the dispute in question falls within the scope of that arbitration agreement." Id.

#### 1.   Does a Valid Agreement to Arbitrate Exist?

The underlying purpose of the FAA is to provide arbitration agreements the same status enjoyed by any other contract. Washington Mut. Fin. Group, 364 F.3d at 264. As such the validity of an arbitration clause may be questioned "on such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining whether such grounds exist, "courts apply the contract law of the particular state that governs the agreement." Washington Mut. Fin. Group, 364 F.3d at 264; see also Pennzoil Exploration, 139 F.3d at 1064 ("Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate a dispute unless the court determines the parties agreed to arbitrate the dispute in question."); cf. Fazio v. Lehman Bros., Inc., 340 F.3d 386, 393 (6th Cir. 2003) ("State contract law, however, governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses.").

2

Regarding the validity of the arbitration agreement, the Plaintiff argues that the arbitration clause at issue "is unconscionable in that it is biased towards Defendant and thereby lacks mutuality." Docket No. 10. The Plaintiff cites no cases for this proposition, but the nature of his claim is clear. The arbitration clause at issue provides for a proceeding presided over by three arbitrators. Docket No. 6 at Exhibit 1 (Paragraph Fifteen). Each party may appoint one of its own choosing, while the third and only neutral arbitrator is to be appointed by the "Senior Judge of the Superior Court of Muscogee County, Georgia." Id. The Plaintiff complains that said judge, by virtue of his location in the Defendant's home town, is not truly disinterested. See Docket No. 10 (characterizing the selection process as "a means of allowing Defendant to appoint two non-neutral arbitrators in its favor").

The parties have not specified which jurisdiction's law governs their contracts, and this information is not self-evident from either of the contracts. Neither does the Court have before it sufficient facts to engage in any sort of choice-of-analysis sua sponte.[1] However, the issue is of little moment, as the law of both probable jurisdictions appears to be much the same. Texas[2] law recognizes two basic sorts of unconscionability: procedural and substantive. Autonation USA Corp. v. Leroy, 105 S.W.3d 190, 198 (Tex. App.—Houston [14th Dist.] 2003, no pet. h.). The former refers "to the circumstances surrounding the adoption of the arbitration provision," while the latter concerns "the fairness of the arbitration provision itself." Id. Georgia[3] law recognizes the same basic legal framework. See NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 771-72 (Ga. 1996) (recognizing and applying distinction between procedural and substantive unconscionability in non-arbitration context); see also Crawford v. Results Oriented, Inc., 548 S.E.2d 342, 342 (Ga. 2001) (affirming

---

[1] There is both diversity and federal question jurisdiction in this matter. Docket No. 1. As such, this Court would be constrained to apply Texas's choice-of-law rules in the absence of a contrary contractual arrangement. Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 403 (5th Cir. 2004); BP Oil Int'l, Ltd. v. Empresa Estatal Petoleos de Ecuador, 332 F.3d 333, 336 (5th Cir. 2003). Texas abides by the "most significant relationship" test, which is, of necessity, a fact-intensive standard. See Mayo, 354 F.3d at 403-05.

[2] Texas is both the state of Plaintiff's citizenship and the state in which he carried out his functions as an independent contractor for AFLAC. Docket Nos. 1, 6.

[3] Georgia is the state in which the Defendant's principal place of business is located, and some aspects of Plaintiff's business relationship with the Defendant involved the latter's "home office in Georgia." Docket Nos. 1, 6. The arbitration clause at issue also references Georgia, but does not include a choice-of-law provision. Docket No. 6 at Exhibit 1 (Paragraph Fifteen).

3

intermediate appellate court's decision citing NEC Techs.' regarding unconscionability in the context of arbitration). Either kind of unconscionability can result in unenforceability of an arbitration clause. In re Halliburton Co., 80 S.W.3d 566, 572 (Tex. 2002). The party asserting unconscionability in whatever form bears the burden of proof. Autonation USA Corp., 105 S.W.3d at 198.

Obviously, the Plaintiff's claim is one of substantive unconscionability. In Texas, assessments of substantive unconscionability dwell on whether "the terms are so one-sided that they are unconscionable under the circumstances existing when the parties made the contract." In re Media Arts Group, Inc., 116 S.W.3d 900, 912 (Tex. App.—Houston [14th Dist.] 2003, no pet. h.). Due consideration is also given to the parties' respective backgrounds and sophistication. Id. However, mere advantage is insufficient. See In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex. 2001) ("The principle is one of preventing oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power."). If anything, Georgia's standard for demonstrating substantive unconscionability is even higher. See, e.g., Results Oriented, Inc. v. Crawford, 538 S.E.2d 73, 80 (Ga. Ct. App. 2000) (characterizing an unconscionable contract as one that "no sane person not acting under a delusion would make and that no honest person would take advantage of") (internal quotation marks omitted).

The Court is unaware of any cases from either Georgia or Texas that address the precise sort of substantive unconscionability claim concerning the arbitrator selection process at issue herein. However, federal courts have invalidated arbitration agreements for unconscionability in instances in which one party enjoys effective control over the arbitration panel via the selection process employed to appoint arbitrators. See, e.g., McMullen v. Meijer, Inc., 355 F.3d 485, 492-93 (6th Cir. 2004) (per curiam) (discussing Hooters of Am. v. Phillips, 173 F.3d 933 (4th Cir. 1999), among other cases). In McMullen, the Court of Appeals deemed the arbitration agreement unconscionable on account of the defendant's "exclusive control over the pool of potential arbitrators." Id. at 494.

Nonetheless, this case is not like McMullen. On its face, the arbitration provision at issue "gives both parties equal participation in choosing arbitrators," In re Media Arts Group, 116 S.W.3d at 912, with a third to be chosen by an otherwise neutral state judge. Although the Plaintiff asserts that appearances are deceptive in this case, he adduces no evidence on this point. To embrace the Plaintiff's conclusory and unsubstantiated allegations concerning the impartiality of the Senior Judge of the Superior Court of Muscogee County, Georgia, would be tantamount to a declaring a sitting

judge corrupt. The Supreme Court has declined to presume such venality on the part of interested parties and facially neutral arbitral associations. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991) (declining "to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators") (internal quotation marks omitted). A public official is entitled to at least as much consideration.

Such untoward assumptions are also wholly unnecessary in light of the FAA's provision for post-arbitration judicial review. See 9 U.S.C. § 10(a)(1)-(2) (providing federal district courts the power to vacate arbitration decisions "procured by corruption, fraud, or undue means" as well as those resulting from "evident partiality or corruption in the arbitrators"); see also Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 232 (1987) ("[T]here is no reason to assume at the outset that arbitrators will not follow the law; although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute."); Williams v. Cigna Fin. Advisors Inc., 197 F.3d 752, 757-59 (5th Cir. 1999) (recognizing violations of public policy, arbitrariness or capriciousness, failure to rely on the underlying contract, and manifest disregard for the law as additional grounds for vacatur of an arbitration decision), cert. denied, 529 U.S. 1099 (2000). Such post-arbitration review is sufficient to ensure the Plaintiff's interests are protected should his fears materialize. Cigna Fin. Advisors Inc., 197 F.3d at 760.

Accordingly, the arbitration clause at issue is not unconscionable. As unconscionability is the sole challenge to the validity of the arbitration provision itself, the parties' arbitration agreement is a valid one.

### 2. Does the Dispute Fall Within the Scope of the Arbitration Agreement?

Notwithstanding the validity of the arbitration clause, the Plaintiff also contends that his lawsuit is not subject to it because the claims asserted do not fall within the scope of the clause's coverage. Docket No. 10. More specifically, the Plaintiff argues that the present dispute is outside of the scope of the arbitration clause due to the fact that the instant litigation "does not require interpretation" of the contracts to which it pertains (i.e., the "Associate's Agreement" and the "Regional Sale Coordinator's Agreement"). Id.

Unlike issues touching on the validity of an arbitration clause, a court is required to determine

the general scope of an arbitration clause "by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the FAA." Ford v. NYLCare Health Plans of Gulf Coast, Inc., 141 F.3d 243, 247 (5th Cir. 1998) (internal quotation marks omitted). There is "a strong presumption" in favor of arbitrability. Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997), cert. denied, 522 U.S. 915 (1997). Doubts concerning the scope of an arbitration clause are resolved in favor of its application. Pennzoil Exploration, 139 F.3d at 1067; Neal v. Hardee's Food Syss., Inc., 918 F.2d 34, 37 (5th Cir. 1990). Hence, an order compelling arbitration under a valid arbitration agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986). Nevertheless, as the foregoing language indicates, "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). "Absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 289 (2002).

Given this analytical framework, courts "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." Waffle House, 534 U.S. at 294. The instant arbitration clause provides that:

> Any dispute arising under this Agreement, to the maximum extent allowed by applicable law, shall be subject to arbitration, and prior to commencing any court action the parties agree that they shall arbitrate all controversies.

Docket No. 6 at Exhibit 1 (Paragraph Fifteen). Another paragraph of the "Associate's Agreement" provides for termination, stating that "AFLAC shall have the right to terminate this Agreement immediately." Id. (Paragraph Seven). The "Regional Sale Coordinator's Agreement" contains a like termination provision. See id. at Exhibit 2 (Paragraph Nine).

"Arising under" is the dispositive language in this case. That is, the question is whether an action filed under 42 U.S.C. § 1981 is one "arising under" the relevant contractual agreement. In a § 1981 case not involving arbitration, the Supreme Court recently opined "that the meaning of the term 'arising under' is not so clear." Jones v. R.R. Donnelley & Sons Co., 124 S. Ct. 1836, 1841

(2004). Although written in an entirely different context, it is clear from the amount of ink dedicated to this and like phrases in federal case law that the phrase "arising under" has also required significant judicial construction where arbitration is concerned. See, e.g., Pennzoil Exploration, 139 F.3d at 1067-68 (discussing import and differing meanings of phrases like "arising out of," "arise under," "relating to," and "connected with").

In maintaining that the instant lawsuit is not subject to arbitration due to the fact that it "does not require interpretation" of the contracts to which it pertains, Docket No. 10, the Plaintiff argues that the instant arbitration clause is exceedingly narrow in scope. It does seem likely that, under Fifth Circuit precedent, the arbitration clause's delimitation to matters "arising under this Agreement" does render it a narrow, as opposed to a broad, one. Coffman v. Provost Umphrey Law Firm, L.L.P., 161 F. Supp. 2d 720, 725 (E.D. Tex. 2001), aff'd without opinion, 2002 WL 433003 (5th Cir. 2002), cert. denied, 537 U.S. 880 (2002). Nonetheless, it does not seem that even such a narrow clause is limited to matters that require interpretation of the agreement. See id. (holding that narrow "arising under" clause "requir[ed] the arbitration of Plaintiff's claims which literally arise under the contract").

In Coffman, the District Court ultimately did hold that the plaintiff's statutory claim under Title VII of the Civil Rights Act fell outside of the scope of the relevant arbitration clause. Id. at 732-33. However, it did so "[b]ecause Plaintiff's statutory claims could be maintained independently of the contract." Id. at 732. Despite involving both an arbitration clause similarly narrow in scope and a not altogether dissimilar statutory discrimination claim, the same cannot be said of the instant Plaintiff's lawsuit.

Plaintiff's suit is primarily one for race discrimination under 42 U.S.C. § 1981.[4] See Docket No. 10 (Plaintiff's own characterization of his suit); Docket No. 1 at Exhibit C ("Plaintiff's Original Petition") This statute provides for equal rights in "the making, performance, modification, and

---

[4] As noted, the Plaintiff also states a state law claim for intentional infliction of emotional distress. Neither party has separately addressed this claim with reference to the issue of arbitration. However, it seems clear enough that this state law claim is factually interwoven with the one being pursued under § 1981. Because parties to arbitration agreements generally "cannot avoid them by casting their claims in tort, rather than in contract," Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 526 (5th Cir. 2000), the Court also finds it to be within the scope of the arbitration clause. See also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd, 1 F.3d 639, 643 (7th Cir. 1993) (stating that "[t]he touchstone of arbitrability" concerning tort claims is "the relationship of the claim to the subject matter of the arbitration clause" and finding claims that "clearly have their genesis in the [a]greement" to be arbitrable) (internal quotation marks omitted).

termination of contracts." 42 U.S.C. § 1981(b). In order to prevail thereunder, a plaintiff must establish three elements: (1) membership in a racial minority; (2) intent to discriminate on the basis of race on the part of the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, in this instance, the termination of a contract. Morris v. Dillard Dept. Stores, 277 F.3d 743, 751 (5th Cir. 2001). As previously noted, Plaintiff alleges that his "Regional Sale Coordinator's Agreement" was terminated on the basis of his minority status rather than simply being terminated for nondiscriminatory reasons under the express termination provision of the agreement.[5] Docket No. 1 at Exhibit C ("Plaintiff's Original Petition"). Accordingly, Plaintiff's § 1981 action is legally dependent on the contract in question. Or, stated differently, without the contract in question, the Plaintiff would have no claim. Hence, his lawsuit is one "arising under this Agreement" in the most literal sense.

Moreover, even if the Plaintiff's comparatively more narrow reading were adopted, it might well still fall within the compass of the instant arbitration clause. See Rojas v. TK Communications, Inc., 87 F.3d 745, 749 (5th Cir. 1996) (citing with approval Crawford v. W. Jersey Health Syss., 847 F. Supp. 1232, 1243 (D.N.J. 1994), in which the district court found that arbitration clause that required "'any dispute . . . regard[ing] the interpretation or performance of any part of this Agreement" to clearly cover ADEA and Title VII claims). While this Court finds the clause in

---

[5] In his Response to Defendant's Motion to Stay Proceedings and to Compel Arbitration, the Plaintiff does, perhaps, suggest an additional theory of liability premised on discriminatory interference in the making of contracts with employees of the Brownsville Independent School District ("BISD"). See Docket No. 10 ("A determination of whether Defendant violated Plaintiff's rights protected by 42 U.S.C. § 1981, in preventing Plaintiff from entering into contracts with BISD employees and other AFLAC agents, does not in any way arise under the agreement between Plaintiff and Defendant."). However, there is no suggestion of such a claim in Plaintiff's Original Petition. Docket No. 1 at Exhibit C. Indeed, Plaintiff's own pleading demonstrates that he could not satisfy the third element of a § 1981 action under such a legal theory by acknowledging that his loss of prospective contractual opportunities with BISD employees was the result of action taken by BISD's Superintendent, not AFLAC. See id. ("BISD's Superintendent . . . delivered a letter to Mr. Chavez, providing him with a 30-day notice of BISD's intent not to renew his services . . . and that his proposal for renewal of the contract had been rejected as allowed under BISD's policies. Plaintiff . . . was thereafter immediately removed from the handling of the proposal he had submitted to BISD for AFLAC products, and he was thereafter terminated from his regional sales coordinator position . . . ."). Also telling in this regard is the fact that, while pleading a state law cause of action for intentional infliction of emotional distress, the Plaintiff does not allege one for tortious interference with prospective contractual or business relations. See Apani Southwest, Inc. v. Coca-Cola Enters., Inc., 300 F.3d 620, 634-35 (5th Cir. 2002) (discussing said cause of action under Texas law).

Crawford to be broader than the one in question, it suggests that Plaintiff's lawsuit might fall within the scope of the arbitration clause at issue even under Plaintiff's narrower interpretation of the clause. As any doubts are to be construed in favor of arbitration, even Plaintiff's alternative construction of the contract at issue compels this Court to order relief pursuant to 9 U.S.C. §§ 3-4.

**B.        Does Any Federal Statute or Policy Render the Dispute Nonarbitrable?**

Having determined that the parties' dispute is within the contours of a valid arbitration clause, the Court must now consider "whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims." Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002). More precisely, the court "must consider whether any federal statute or policy renders the claims nonarbitrable." Washington Mut. Fin. Group, 364 F.3d 260 at 263.

The Plaintiff maintains that his claims are nonarbitrable for two such reasons. First, the Plaintiff maintains that employment contracts, such as the one at issue, are categorically exempt from coverage under the Federal Arbitration Act. See Docket Nos. 14, 16. Second, the Plaintiff argues that "Reconstruction Act actions," like § 1981 suits, "are not precluded by arbitration agreements." Docket No. 10. Neither contention has merit.

**1.        Are Employment Contracts Excluded From the FAA?**

Some employment contracts are, in fact, excluded from coverage under the FAA. See 9 U.S.C. § 1 (excluding "contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce"). However, the Supreme Court has made it clear that this provision is to be very narrowly construed. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001) (rejecting "a construction which would exclude all employment contracts from the FAA"); see also Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 218 (3d Cir. 2003) (stating that, in Circuit City, "the Court resolved any lingering question concerning the FAA's applicability to arbitration agreements in the employment context"). This narrow construction is consistent with the pre-Circuit City jurisprudence of this and almost every other circuit. See, e.g., Miller v. Pub. Storage Mgmt., Inc., 121 F.3d 215, 217 (5th Cir. 1997) (noting that circuit had rejected broad reading of the FAA's exclusion of employment contracts); Rojas, 87 F.3d at 748 ("We agree with the majority of other courts which have addressed this issue and conclude that § 1 is to be given a narrow reading.").

9

The Plaintiff has not alleged that the contract at issue fits within this narrow exception as it has been construed by the courts. Indeed, Plaintiff's latest filing with the Court implicitly concedes that he relies on an interpretation of 9 U.S.C. § 1 that has been rejected. See Docket No. 16 (citing the dissenting opinion in Circuit City).

### 2.    Are § 1981 Claims Excluded From the FAA?

The Supreme Court has observed that not "all controversies implicating statutory rights are suitable for arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627 (1985). Nonetheless, it is equally clear at this date that statutory claims often are arbitrable under the FAA. See Gilmer, 500 U.S. at 26 ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). Moreover, statutory claims need not be expressly identified or enumerated in any given arbitration clause in order to fall within its coverage. Mitsubishi Motors Corp., 473 U.S. at 624-25.

In order to determine if a federal statutory cause of action is nonarbitrable, courts "ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000). "[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." Green Tree, 531 U.S. at 91-92. Plaintiff's sole attempt in this regard consists of the citation of McDonald v. City of W. Branch, 466 U.S. 284 (1984). Docket No. 10. Plaintiff's reliance on McDonald, however, is misplaced. The Supreme Court has previously distinguished McDonald in other cases that found statutory discrimination claims arbitrable. See Gilmer, 500 U.S. at 33-35 (distinguishing between statutory discrimination claim before it and the line of cases to which McDonald belongs); see also Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 75-81 (1998) (characterizing McDonald and Gilmer as belong to two separate and distinct lines of cases that implicate different concerns).

Certainly, McDonald cannot be cited for the proposition that federal statutory discrimination claims are nonarbitrable under the FAA. Quite the opposite is true. See Circuit City, 532 U.S. at 123 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific

protection against discrimination prohibited by federal law . . . ."). In the wake of Gilmer, federal courts of appeals have generally found federal statutory discrimination claims susceptible to arbitration. See Spinetti, 324 F.3d at 218 ("Following Gilmer, federal courts continually enforced arbitrations of employment-discrimination claims under Title VII as well as under the ADEA."); Cigna Fin. Advisors Inc., 197 F.3d at 760 ("Following the Gilmer reasoning, most of the courts of appeals have concluded that individual Title VII claims can be subjected to compulsory arbitration under employees' non-collective bargaining agreements to arbitrate pursuant to the FAA."); Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 364 (7th Cir. 1999) ("Courts after Gilmer have routinely endorsed arbitration of discrimination claims, including those brought pursuant to Title VII."), cert. denied, 528 U.S. 811 (1999); Rojas, 87 F.3d at 747 ("Following Gilmer this court held that Title VII claims must likewise be arbitrated.").

Gilmer's impact has been so marked that one can now accurately say that "[i]t is well settled that judicial protection of pre-dispute arbitral agreements extends to agreements to arbitrate statutory employment discrimination claims." McMullen, 355 F.3d at 489. Gilmer itself involved the Age Discrimination in Employment Act ("ADEA"). 500 U.S. at 23. Other courts have found claims under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act ("Title VII"), for example, to be arbitrable. See, e.g., McWilliams v. Logicon, Inc., 143 F.3d 573, 576 (10th Cir. 1998) (ADA); Pub. Storage Mgmt., 121 F.3d at 218 (noting that federal courts have found claims under the ADA, ADEA, and Title VII to be arbitrable); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir. 1991) (Title VII).

The fact that the Fifth Circuit determined in Alford that Title VII claims are arbitrable is significant in this case, given Title VII's similarity to § 1981. See Wilmington v. J.I. Case Co., 793 F.2d 909, 918 (8th Cir. 1986) ("We see no principled basis for distinguishing cases involving section 1981 from similar cases involving Title VII, the Fair Labor Standards Act, or section 1983."); Strozier v. Gen. Motors Corp., 635 F.2d 424, 425-26 (5th Cir. 1981) (per curiam) (treating Supreme Court case law concerning Title VII as controlling in litigation involving § 1981 claim). However, there is a far more direct indication that § 1981 claims are arbitrable in their own right. At least two federal courts have noted that 42 U.S.C. § 1981 was amended by the Civil Rights Act of 1991, which contains a statement encouraging alternative dispute resolution, including arbitration. Shaw v. DLJ Pershing, 78 F. Supp. 2d 781, 781-82 (N.D. Ill. 1999); Almonte v. Coca-Cola Bottling Co. of New

York, Inc., 959 F. Supp. 569, 574 & n.3 (D. Conn. 1997). Hence, it is little wonder that federal courts have sent § 1981 claims to arbitration. See, e.g., Emeronye v. CACI Int'l, Inc., 141 F. Supp. 2d 82, 83-88 (D.D.C. 2001); Shaw, 78 F. Supp. 2d at 781-82; Almonte, 959 F. Supp. at 574. Accordingly, this Court is persuaded that such claims are not precluded from arbitration under the FAA.

### III.   CONCLUSION

For the reasons elaborated above, the Court hereby **ORDERS** "the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Furthermore, the Court **STAYS** this lawsuit "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Signed in Brownsville, Texas, this 26th day of July, 2004.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE